UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN THE MATTER OF
THE EXTRADITION OF
HAROLD HOUCK

Case No. 6:26-mj-1982

# MEMORANDUM OF LAW IN SUPPORT OF EXTRADITION

On August 20, 2026, the United States filed a complaint seeking the arrest of Harold HOUCK based on a request from the Government of Liechtenstein for his extradition pursuant to its extradition treaty with the United States. *See* Doc. 1; Extradition Treaty Between the United States of America and the Principality of Liechtenstein, U.S.-Liech., May 20, 1936, 50 Stat. 1337 (the "Treaty"). In support of its request, Liechtenstein submitted the necessary documents to the U.S. Department of State through the appropriate diplomatic channel. *See* Doc. 1-1. By statute, this Court must hold a hearing to consider the evidence of criminality presented by Liechtenstein and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.

The United States submits this memorandum to set forth the procedural and factual background of the case and to explain the legal standards and protocols that govern extradition proceedings. As detailed herein, the evidence submitted by Liechtenstein fulfills the relevant requirements under the Treaty and extradition statute. Pursuant to 18 U.S.C. § 3184, the Court should therefore "certify the same" to the Secretary of State, who will decide whether to surrender the fugitive "according to the treaty."

After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors," including humanitarian ones, "affecting both the individual defendant as well as foreign relations which the extradition magistrate may not." *Id.*

## I. BACKGROUND

Liechtenstein seeks the extradition of HOUCK to serve a sentence based on his conviction for the offense of attempted grand compulsion, in violation of sections 15, 105(1), and 106(1)(1) of the Liechtenstein Strafgesetzbuch Criminal Code ("LSCC").[1] The facts underlying HOUCK's conviction were summarized in detail in the government's complaint and in the final judgment of Liechtenstein's Princely Supreme Court. *See* Doc. 1; Doc. 1-1 at 66–78. In short, HOUCK was convicted in Liechtenstein of attempting to coerce Dr. Andreas Schurti into providing HOUCK millions of dollars held in a trust managed by Schurti through threatening to murder Dr. Schurti and his family and threatening to burn his house down. *See* Doc. 1-1 at 66–78.

According to documents provided by Liechtenstein, the conduct underlying

[1] Throughout the materials provided by Liechtenstein, this offense is sometimes referred to as attempted aggravated compulsion, attempted grand coercion, and attempted grand compulsion, depending on the translation. *See generally* Doc. 1-1. In this briefing, the United States refers to the offense of attempted grand compulsion, consistent with the international arrest warrant for HOUCK that issued on September 7, 2004. *See id. at* 61.

HOUCK's conviction and sentence spanned from mid-December 2002 until May 2003. Doc. 1-1 at 67. Specifically, HOUCK—acting under an alias—made phone calls and sent messages threatening murder and arson, and even appeared at Dr. Schurti's home, all for the purpose of obtaining a large sum of money from a trust Schurti was managing on behalf of James Sullivan. *Id.* at 67–73. HOUCK was attempting to obtain these funds to fulfill a civil judgment imposed against Sullivan for the wrongful killing of Sullivan's estranged wife. *Id.* HOUCK was eventually arrested in Zurich, where he traveled to meet Schurti, at which point he had in his luggage a gas pistol, knives, and a club. *Id.* at 73–74. HOUCK was extradited to Liechtenstein and held in pretrial detention by the Princely Court of Justice. *Id.* at 74.

Eventually, on July 30, 2003, in the Princely Court of Justice, HOUCK was convicted of attempted grand extortion pursuant to sections 15, 144(1), 145(1)(1), and (2)(2) of the LSCC. Doc. 1-1 at 66, 74. He received a three-year sentence, and in support of the sentence, the Princely Court of Justice stated, among other things:

> The Defendant's guilt is basically substantial. He proceeded according to a well-prepared and obviously carefully thought-out plan in an extremely perfidious manner from the cover of his anonymity, continuously increasing the intensity of his threats and in the end extending them to persons close to Dr. Schurti, namely his children and then his wife. His guilt is also considerable because the threats were directed against Dr. Schurti in connection with the latter's work as a financial intermediary, which in the end is an indirect attack on Liechtenstein as a financial centre, and which represented a sensitive disturbance of the legal system of Liechtenstein. Since extortions and threats against Liechtenstein financial intermediaries have been recently increasing, severe punishment must be the reaction for reasons of general prevention alone in order to nip further offences in that field in the bud.

*Id.* at 74.

Two appeals followed. First, HOUCK appealed to the Princely Court of

Appeal, which, on November 5, 2003, reduced HOUCK's sentence to one year of imprisonment, based on the same facts, but for the offense of attempted coercion, and his sentence was suspended with a probation period of two years. *Id.* at 66–67, 74–75. Second, the Office of the Public Prosecutor appealed to the Princely Supreme Court, which, by judgment dated February 5, 2004, revised the sentence to three years of imprisonment, for the offense of attempted grand compulsion, pursuant to LSCC sections 15, 105(1), and 106(1)(1), and removed the suspension of the sentence, finding that "[i]n view of these considerations of specific and general prevention, the applying aggravating and mitigating circumstances, and in particular the substantial guilt of the Defendant, the Princely Supreme Court considers a sentence of three years of imprisonment to be adequate for guilt and offence." Doc. 1-1 at 67, 75–78.

After being personally served in the United States with a summons to appear to serve his three-year sentence, HOUCK failed to appear and has not yet served his sentence. Doc. 1-1 at 79–84. As a result, on September 7, 2024, the Princely Court of Justice issued an international arrest warrant for HOUCK, which remains outstanding. Doc. 1-1 at 61–62.

## II. ARGUMENT

This memorandum first takes up the general principles of extradition and this Court's role in the extradition proceedings before addressing how the requirements for certification of extraditability are satisfied and how the evidence submitted by Liechtenstein is sufficient for certification here.

### A. General Principles of Extradition

Extradition is primarily an executive responsibility with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see Kastnerova v. United States*, 365 F.3d 980, 984 n.5 & 986 (11th Cir. 2004). That judicial function is carried out by conducting a hearing pursuant to 18 U.S.C. § 3184. At the hearing, the Court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification, as defined in the Treaty, statutes, and case law, have been established. If any evidence is offered by the fugitive, the Court should rule on its admissibility. Once the evidentiary record is complete, the Court should make written findings of fact and conclusions of law as to each of the elements for certification. *Cf. Shapiro v. Ferrandina*, 478 F.2d 894, 904–06 (2d Cir. 1973).

If the Court finds that the requirements for certification have been met, it must provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and must commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184 (following certification, the extradition judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made"); see *Martin*, 993 F.2d at 828–29. Once the Court issues its certification, the Secretary of State then decides whether to surrender the fugitive to the requesting country.

In fulfilling its function under 18 U.S.C. § 3184, a judge should liberally construe the applicable extradition treaty to effect its purpose, namely, the surrender of fugitives to the requesting country. *See Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10 (1936) (citations omitted); *Factor v. Laubenheimer*, 290 U.S. 276, 293–94 (1933); *Vardy v. United States*, 529 F.2d 404, 406–07 (5th Cir. 1976); *see also Martinez v. United States*, 828 F.3d 451, 463–64 (6th Cir. 2016) (en banc) (stating that the "default rule" is that any ambiguity in extradition treaty must be construed in favor of "facilitat[ing] extradition"). Accordingly, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Factor*, 290 U.S. at 298 (citations omitted). Moreover, the United States does not expect foreign governments to be versed in U.S. criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (citation omitted).

**B. The Requirements for Certification Are Satisfied**

A court must certify a fugitive as extraditable where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *See In Re Extradition of Wallace*, 543 F. Supp. 3d 1296, 1301

(M.D. Fla. 2021) (citations omitted); *In re Extradition of Shaw*, No. 14-cv-81475, 2015 WL 3442022, at *5 (S.D. Fla. May 28, 2015) (citing *Fernandez*, 268 U.S. at 312). As explained below, each of the elements has been met in this case.

1. <u>This Court Has Authority Over the Proceedings</u>

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. The judicial officer conducting the extradition hearing prescribed by § 3184 acts in a "non-institutional capacity by virtue of a 'special authority.'" *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993). Both magistrate judges and district judges may render a "certification" under § 3184. *See Austin v. Healey*, 5 F.3d 598, 601–02 (2d Cir. 1993); *see also Martin*, 993 F.2d at 828 ("The extradition magistrate conducts a hearing simply to determine whether there is 'evidence sufficient to sustain the charge [against the defendant] under the provisions of the proper treaty or convention.'" (quoting 18 U.S.C. § 3184)). Further, the Local Rules authorize magistrate judges to handle extradition matters. *Wallace*, 543 F. Supp. 3d at 1301 (citing Local Rule 1.02(a)).

2. <u>This Court Has Jurisdiction Over HOUCK</u>

"It is well settled that a court has jurisdiction over a fugitive found within its jurisdictional boundaries. *See Wallace*, 543 F. Supp. at 1301 (citing *Matter of Extradition of Damas*, No. 18-80770-MC-UNA/DLB, 2018 WL 11188079, at *3 (S.D. Fla. Nov. 29, 2018). A court "may, upon complaint made under oath, charging any

person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty . . . issue his warrant for the apprehension of the person so charged." 18 U.S.C. § 3184. Because HOUCK was arrested in Orlando, Florida, within the Middle District of Florida, this Court has jurisdiction over him.

3. <u>The Relevant Treaty Is in Full Force and Effect</u>

Section 3184 provides for extradition in specifically defined situations, including whenever a treaty or convention for extradition is in force between the United States and the requesting state. *See* 18 U.S.C. § 3184; *see also Arias Leiva v. Warden*, 928 F.3d 1281, 1285 (11th Cir. 2019); *Kastnerova*, 365 F.3d at 986–87. The government previously submitted a declaration from an attorney in the Office of the Legal Adviser for the U.S. Department of State attesting that there is a treaty in full force and effect between the United States and Liechtenstein. *See* Doc. 1-1 at 2–3 ("The relevant and applicable treaty provisions in full force and effect between the United States of America and the Liechtenstein are found in the Extradition Treaty between the United States of America and the Principality of Liechtenstein, signed on May 20, 1936 . . . ."). The Court must defer to the Department of State's determination in that regard. *See Arias Leiva*, 928 F.3d at 1288 (noting that where the "[Department of State] declaration set forth the United States Executive Branch's position—that the treaty remains in full force," courts "have no answer but this: the treaty remains in effect"); *Kastnerova*, 365 F.3d at 985–87; *Matter of Extradition of Martinelli Berrocal*, No. 17-22197-Civ-TORRES, 2017 WL 3776953, at *11 (S.D. Fla.

Aug. 31, 2017) (noting that "every Circuit Court, including our own, has deferred to the executive branch" as to whether an extradition treaty is in force).

4. The Treaty Covers the Offense

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the relevant treaty. In this case, Article I of the Treaty provides for the return of a fugitive "who is charged with or has been convicted of any of the crimes or offenses specified in Article II of the present Treaty, if the punishable act was committed within the jurisdiction of one of the High Contracting Parties and the person . . . is found there." In turn, Article II states, "Such persons shall be delivered up, according to the provisions of the present Treaty, who shall have been charged with or convicted of" any of the crimes or offenses listed within that Article. *Id.* at 8–9. Notably, Article II(17) lists the offense of larceny, defined as "the theft of articles, movable property or money of the value of twenty-five or more dollars or the equivalent thereof in Liechtenstein currency," and paragraph 27 includes attempts to commit any such crimes. *Id.* at 9–10. Article II further provides that when one of the enumerated crimes "is not designated as such in the laws of one of the States, extradition shall still take place" when the crime "includes as an essential element an act which is designated as punishable, by the laws of the State in whose territory the fugitive is found." *Id.* at 10.

In assessing whether the Treaty covers the crime for which extradition is

requested, the Court should examine the description of HOUCK's criminal conduct and decide whether that conduct constitutes an offense among those listed in Article II. *Factor*, 290 U.S. at 298–300. An offense is extraditable, regardless of whether it is expressly designated on the Treaty's list, so long as the underlying conduct constitutes one of the enumerated offenses. *See, e.g.*, *id.*; *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (stating that treaty that listed "murder" as extraditable encompassed offenses charged as "war crimes"); *Polo v. Horgan*, 828 F. Supp. 961, 964–65 (S.D. Fla. 1993) (stating that treaty that listed "fraud" as extraditable encompassed offenses charged as "embezzlement" and "unfaithful management"). In determining whether the conduct constitutes an enumerated offense, "a narrow and restricted construction is to be avoided," and "if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." *Factor*, 290 U.S. at 293–94 (citations omitted).

As noted above, Article II paragraph 17 or the Treaty enumerates "the theft of articles, movable property or money of the value of twenty-five or more dollars or the equivalent thereof in Liechtenstein currency," and paragraph 27 accounts for attempts to commit the enumerated crimes. Doc. 1-1 at 9–10. The submissions from Liechtenstein, including the final judgment of the Princely Supreme Court, reflect that HOUCK threatened Schurti for the purpose of trying to obtain millions of dollars from Schurti. Because HOUCK committed these acts for the purpose of obtaining significant sums of money (a value far exceeding $25), the Treaty covers

the crime for which Liechtenstein seeks extradition. *See also* Doc. 1-1 at 2 (State Department declaration noting that "[t]he offenses for which extradition is sought are covered by Article 2 of the Extradition Treaty").

5. <u>There is Probable Cause that HOUCK Committed the Offense</u>

To certify the evidence to the Secretary of State, the Court must conclude that probable cause exists to believe that HOUCK committed the crime underlying Liechtenstein's extradition request. *Wallace*, 543 F. Supp. 3d at 1301–02; *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1432–33 (S.D. Fla. 1993); *see also Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962) (noting that in an extradition case, the magistrate judge "should not require evidence to convince himself that the defendant was guilty, but only that 'furnishing good reason to believe that the crime alleged had been committed by the person charged with having committed it'" (quoting *United States v. Burr*, 25 Fed. Cas. 2, 12 (C.C.D. Va. 1807)). The Court's probable cause determination is "not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986) (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 n.2 (9th Cir. 1981)). "The evidence is sufficient, and probable cause is established, if it would cause a 'prudent man' to 'believ[e] that the (suspect) had committed or was committing an offense.'" *Wallace*, 543 F. Supp. 3d at 1302 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).

Here, the evidence provided by Liechtenstein in support of its request for

HOUCK's extradition establishes probable cause that HOUCK committed the relevant offense. Liechtenstein has provided a copy of the judgment convicting HOUCK of that crime; nothing further is required. *See* Article XI of the Treaty (stating that "[i]f the accused person has been sentenced for the crime or offense for which his extradition is requested, a duly authenticated copy of the sentence of the court which pronounced the sentence shall be produced"); *see also, e.g.*, *Wallace*, 543 F. Supp. 3d 1302 ("Evidence establishing probable cause 'can of course include the fact that a foreign tribunal has convicted the defendant.'" (quoting *Arias Leiva*, 928 F.3d at 1295)); *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (stating that "a certified copy of a foreign conviction, obtained following a trial at which the defendant was present" constitutes sufficient evidence to establish probable cause); *Haxhiaj v. Hackman*, 528 F.3d 282, 290 (4th Cir. 2008) ("A foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause.").

Moreover, HOUCK was present in Liechtenstein during the initial criminal proceedings and was also held in pre-trial detention there until a few months after the initial conviction. Doc. 1-1 at 67, 74–75; *see also id.* at 42 (noting his release was November 5, 2003, which is after the original July 2003 judgment). HOUCK was also represented by counsel during the revision (appeal) proceedings—initiating the first appeal and submitting a counter-statement in response to the prosecution's appeal—and the facts were not contested during those proceedings. *Id.* at 66–67, 74–76. The final judgment was served on his counsel, *id.* at 6, and HOUCK was

also served with a summons to appear to serve his sentence, *id.* at 43, 79–84. Accordingly, the record of his conviction is sufficient evidence of probable cause.

Even if the judgment of conviction alone were not sufficient to establish probable cause, the evidence described therein and elsewhere in the extradition request independently establishes probable cause that HOUCK committed attempted grand compulsion, in violation of sections 15, 105(1), and 106(1)(1) of the Liechtenstein Criminal Code. The pertinent statutes make it unlawful for "[a]ny person [to] coerce[] another person to carry out, acquiesce in or omit to carry out an act by force or a dangerous threat"—or to attempt to do so—and they define "aggravated coercion" as committing coercion by "threatening death" or "arson." Doc. 1-1 at 48.

Here, Liechtenstein submitted the certified final judgment against HOUCK, which provides a detailed account of HOUCK's conduct and the various criminal proceedings that took place in Liechtenstein. Doc. 1-1 at 66–78. HOUCK's conduct included threatening murder and arson over a period of multiple months to coerce Schurti into providing him large sums of money. *Id.* The materials provided by Liechtenstein identify HOUCK by date of birth and last known address, and his last known address matches his current residence. *See* Doc. 1-1. Additionally, during the revision (appeal) proceedings, the underlying facts pertaining to HOUCK's criminal conduct were not challenged. *Id.* at 76. The extradition request therefore contains more than sufficient evidence to establish probable cause to believe that HOUCK committed the offense for which Liechtenstein seeks his extradition.

### C. The Evidence Submitted by Liechtenstein Is Sufficient for Certification

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique and limited in its nature. *See, e.g.*, *Martin*, 993 F.2d at 828. Its purpose is to decide the sufficiency of the charge under the relevant treaty, not guilt or innocence—that is for the foreign court. *See id.*; *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1163–65 (11th Cir. 2005). Accordingly, an extradition hearing is not a criminal proceeding. *See, e.g.*, *Martin*, 993 F.2d at 828. Rather, it is "an administrative proceeding arising under international law for certification and approval of the State Department's decision to extradite this person at the request of a foreign government," *Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1284 (S.D. Fla. 2017), and it is governed by "the general extradition law of the United States and the provisions of the Treaty," *Emami v. U.S. Dist. Ct. for N.D. Ca.*, 834 F.2d 1444, 1450–51 (9th Cir. 1987).

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition hearings. *See* Fed. R. Crim. P. 1(a)(5) (stating that "extradition and rendition of a fugitive" are not governed by rules); Fed. R. Evid. 1101(d)(3) (stating that evidence rules are inapplicable to "miscellaneous proceedings such as . . . extradition or rendition"); *Afanasjev*, 418 F.3d at 1164–65. Rather, "unique rules of wide latitude govern reception of evidence in Section 3184 hearings." *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969) (internal citation and quotation marks omitted). Among these rules are the following:

1. <u>Written Submissions Are Sufficient; No Live Witnesses Are Required</u>

Extradition treaties do not contemplate the introduction of live witness testimony at extradition proceedings because to do so "would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Rather, pursuant to 18 U.S.C. § 3190, documents submitted by the country requesting extradition "shall be received and admitted as evidence" so long as they are "properly and legally authenticated," as confirmed by "the principal diplomatic or consular officer of the United States resident in such foreign country." 18 U.S.C. § 3190.[2]

Accordingly, "[a] certification of extradition is generally based entirely on the authenticated documentary evidence provided by the requesting government." *Martinelli Berrocal*, 2017 WL 3776953, at *9 (citations omitted); *see also Bovio v. United States*, 989 F.2d 255, 259–61 (7th Cir. 1993) (finding that Swedish investigator's statement sufficient to establish probable cause); *Castro Bobadilla*, 826 F. Supp. at 1433–34 (finding documents and statements sufficient for extradition to Honduras); *Shaw*, 2015 WL 3442022, at *9 ("'The primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for purposes of this determination'" (quoting *In re Extradition of Atta*, 706 F. Supp. 1032, 1050–51 (E.D.N.Y. 1989))). Nothing

[2] The documents filed in this case meet the requirements of 18 U.S.C. § 3190 because they are accompanied by a certification of Scott C. Miller, Ambassador to the United States of America at Bern, Switzerland, attesting to the documents' authentication. Doc. 1-1 at 14. This is confirmed by the declaration of Lara Berlin. *Id.* at 3.

more is required, and typically nothing more is provided. *See*, *e.g.*, *In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277, 1287 (S.D. Fla. 2011) (stating that "[i]t is exceedingly rare for the Government to submit anything other than documents in support of an extradition request" and noting that the extradition statute enables "the requesting country to meet its burden of proof through documents subject only to requirements necessary to guarantee their authenticity").

Thus, hearsay evidence is admissible at extradition hearings and may properly support a finding of extraditability. *See Nunez-Garrido*, 829 F. Supp. at 1287; *Bingham*, 241 U.S. at 517 (rejecting fugitive's claim that witness affidavits should not be considered because he had not had the opportunity to cross-examine those witnesses); *Afanasjev*, 418 F.3d at 1165 (unsworn statements may be sufficient to justify extradition).

2. Limitations on the Fugitive's Evidence

Because an extradition hearing is "in the nature of a preliminary hearing," *Kastnerova*, 365 F.3d at 987 (quoting *Sayne*, 418 F.2d at 658), HOUCK's opportunity to challenge the evidence introduced against him is heavily circumscribed. "Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Martinelli Berrocal*, 2017 WL 3776953, at *9 (quoting *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005)); *see also, e.g.*, *Collins v. Loisel*, 259 U.S. 309, 315–17 (1922); *Castro Bobadilla*, 826 F. Supp. at 1433. As such, "[t]estimony that merely gives the

opposite version of the facts does not destroy the [probability] of guilt and is therefore inadmissible." *Martinelli Berrocal*, 2017 WL 3776953, at *9 (internal quotation marks omitted). Moreover, technical and procedural defenses are not permitted. *See Bingham*, 241 U.S. at 517; *Glucksman v. Henkel*, 221 U.S. 508, 513–14 (1911) (stating that variance between charges pending in the foreign country and the complaint filed in federal court is not a valid defense to surrender). This allowance of "explanatory evidence" and prohibition on "contradictory evidence" is rooted in the fact that an extradition judge "does not weigh conflicting evidence" and determine what to credit, "but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn*, 783 F.2d at 815. Issues requiring factual or credibility determinations are reserved for the courts in the requesting country to resolve after the fugitive is extradited.

3. Other Matters Are Generally Left to the Secretary of State

Other than the sufficiency of the evidence, all matters that a fugitive may raise as defenses to extradition are to be considered by the Secretary of State, who "retains the final call on whether to issue a warrant of surrender." *Arias Leiva*, 928 F.3d at 1286 (internal quotation marks omitted). The Secretary "may properly consider myriad factors affecting both the individual defendant as well as foreign relations—which the Judicial Branch may not." *Id.* (internal quotation marks and citation omitted). For example, the Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment

in the receiving country. *See Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999). This is consistent with the long-held understanding that surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State," within the Executive's powers to conduct foreign affairs. *See In re Kaine*, 55 U.S. 103, 110 (1852).

## III. CONCLUSION

WHEREFORE, the United States requests that the Court determine that the submission on behalf of Liechtenstein is sufficient to sustain the charge under the provisions of the Treaty and certify the extradition of HOUCK to the Secretary of State for possible surrender to Liechtenstein.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: /s/ Sarah Megan Testerman
Sarah Megan Testerman
Assistant United States Attorney
Florida Bar No. 0124884
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Fax: (407) 648-7643
E-mail: megan.testerman@usdoj.gov

**U.S. v. HAROLD HOUCK** **Case No. 6:26-mj-1982**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Fabian Goffe, Esq.
Attorney for Harold Houck

*/s/ Sarah Megan Testerman*
Sarah Megan Testerman
Assistant United States Attorney
Florida Bar No. 0124884
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Fax: (407) 648-7643
E-mail: megan.testerman@usdoj.gov